IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

**GEOFFREY S. BURKE,**

      Plaintiff,

v.                              **CIVIL ACTION NO. 1:19-cv-00386**

**BMW OF NORTH AMERICA, LLC,**

and

**BMW MANUFACTURING CO., LLC**
**SERVE:**
BMW Manufacturing Co., LLC
The Corporation Trust Company, Registered Agent
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

      Defendants.

## FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Geoffrey S. Burke, by counsel, and moves for judgment against the defendant on the grounds and in the amount as hereinafter set forth:

1. This is a case for breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act ("the Act), violation of the Virginia Motor Vehicle Warranty Enforcement Act, breach of the Virginia Consumer Protection Act, and common law fraud, for the plaintiff's damages and legal fees, or in the alternative revocation of acceptance and legal fees.

## PARTIES

2. GEOFFREY S. BURKE, (hereinafter, "the Plaintiff"), is a consumer who resides in Alexandria, Virginia and chooses to bring this cause of action in the Alexandria Division of the United States District Court for the Eastern District of Virginia.

3. BMW OF NORTH AMERICA, LLC, (hereinafter "BMW NA") is a limited liability company that distributes new automobiles to consumers in the United States through its authorized BMW dealers nationwide, including BMW of Alexandria, located in Alexandria, Virginia, and whose company headquarters are located in Woodcliff Lake, New Jersey.

4. BMW MANUFACTURING CO., LLC ("BMW Manufacturing") is a corporation organized under the laws of Delaware, with its principal place of business at 1400 Highway 101 South, Greer, South Carolina 29651 and a registered agent at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION

5. This Court has jurisdiction over this action pursuant to the federal Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq., since the amount in controversy exceeds $50,000.00, invoking 28 USC §1331, and/or the amount in controversy is more than $75,0000 and is between citizens of different states, invoking 29 USC §1332. This court has supplemental jurisdiction of the state law claims regarding the same transaction and events pursuant to 28 U.S.C §1367(a).

6. This Court has general and specific personal jurisdiction over Defendants by virtue of these Defendants' respective continuous and systematic business activities in this Commonwealth, directly or through intermediaries, such as its authorized BMW dealers, which activities give rise to at least a portion of the common law fraud and statutory claims alleged herein and include: (i) manufacturing, distributing, warranting, and offering for sale and/or selling the vehicle in question in this case in this Commonwealth; (ii) purposefully and voluntarily placing the plaintiff's vehicle, and others like it, into the stream of commerce with the expectation that these vehicles will be purchased by consumers in Virginia and other states; and/or (iii) deriving substantial revenue from the sale of these vehicles provided to consumers in Virginia.

7. Venue is proper in this Judicial District as to each defendant under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) by virtue of each defendant's continuous and systematic business activities in this Judicial District, directly or through intermediaries, such as its authorized BMW dealers, which activities give rise to violations of law alleged herein and include: (i) manufacturing, distributing, warranting, and offering for sale and/or selling the vehicle in question in this case in this Commonwealth; (ii) purposefully and voluntarily placing the plaintiff's vehicle, and others into the stream of commerce with the expectation that these vehicles will be purchased by consumers in this Virginia and other states; and/or (iii) deriving substantial revenue from the sale of these vehicles provided to consumers in Virginia.

## FACTS

8. At all times relevant, BMW of Alexandria ("the Dealer") was a supplier and an authorized dealer for BMW NA and BMW Manufacturing for the sale and repair of defects covered by BMW NA's warranties.

9. Approximately a month before the date of purchase of the vehicle in question, in order to make sure it was brand new with no problems or damage, and to make sure it had the color and all the optional features he wanted, the Plaintiff ordered a custom built-to-order 2018 BMW X5 SUV ("the vehicle") from BMW NA through the Dealer. When the Plaintiff visited the Dealer to select each optional feature that he desired on the vehicle, one such option selected by the Plaintiff included a custom $500 upgrade for a special "mineral white metallic" paint offered on the vehicle by BMW NA. When the Plaintiff placed his order for the vehicle with the Dealer, he told both his salesman and the manager of the Dealer, Mr. Levent Inal, that he was placing an order for a new vehicle that had no issues or problems and was assured that is what he would get because the vehicle would be manufactured only if the Dealer sent his order to BMW NA.

10. Plaintiff called the defendants several times after the vehicle began the manufacturing process to check on the status of the build and in one of these calls during the manufacturing process that takes place in South Carolina, the representative told the Plaintiff that the vehicle had been pulled "off the line", but the plaintiff was assured by the representative that

4

this could be for any number of reasons, without specifying why the car was "pulled off the line." As such, Plaintiff thought nothing of this since he was told this was normal in the manufacturing process for this vehicle.

11. After having been painted once during the manufacturing process, but before installation of the glass windows and other parts occurring after the painting process was complete, the vehicle in question was damaged in some fashion, or the painting process itself was defective in some manner requiring the passenger side quarter panel, and parts of the passenger side C pillar and roof (hereinafter collectively referenced as the "passenger side quarter panel area and roof"), to be repaired and repainted over the paint originally applied during the painting process.

12. The repainting of the quarter panel area was not done properly resulting in the paint in this area being noticeably different than on the rest of the vehicle, and making it appear as if the vehicle had been previously damaged, thereby substantially impairing the value of the vehicle.

13. Inspection of the vehicle by several experts, including an expert retained by BMW NA, revealed the passenger side quarter panel area has a much thicker application of paint than the other areas of the vehicle and even the paint expert employed by BMW NA to inspect the vehicle noted the repair was of poor quality.

14. Additional investigation by Plaintiff's body shop paint expert indicates that this repaint was done <u>prior to</u> the vehicle's glass windows being installed in the vehicle during the manufacturing process at the BMW Manufacturing factory, thereby revealing that this repaint

5

was done while in the possession of BMW Manufacturing, rather than after delivery to the Dealer or after sale to the Plaintiff.

15. When Defendants sold and transferred the vehicle to the Dealer, they failed to disclose the fact that the passenger side quarter panel area and roof of the vehicle had been repainted during the manufacturing process, or at some time before sale to the Plaintiff. This concealment of the repainting described above was done in order to deceive the Plaintiff, or potential customers like him, into believing the vehicle had never been damaged or repainted.

16. Based on its history of deliberate concealment of the repainting of new vehicles damaged or requiring repaint prior to delivery to its authorized dealers, it is believed Defendants' conduct in this case in concealing the repaint of the vehicle was pursuant to a pattern, practice, and plan by which it would deliberately not disclose known damage or repair of the repainting of new BMW vehicles supplied to its authorized dealers, expecting and intending that the vehicles would ultimately be resold without disclosure to unwitting end users, i.e. consumers like the Plaintiff in Virginia or elsewhere, who would rely, as the Plaintiff did, on the false fact that these vehicles had never been previously damaged or repaired or repainted, a material fact the defendants deliberately concealed.

17. Defendants' conduct, representations, and silence were intentional, willful, wanton, and malicious, outrageous by reason of evil motive and/or entail a reckless or conscious disregard for Plaintiff's rights and was without just cause or excuse.

18. Once the vehicle was delivered by Defendants to the Dealer the Plaintiff was notified to come in to accept delivery, pay for it, and sign the purchase paperwork. While there he was advised by the Dealer that the vehicle was new and had no known issues.

19. In deciding whether to purchase the vehicle, the Plaintiff relied on the "agreement"[1] he had with the Dealer and BMW NA, an agreement which included the warranties, express and implied, given by BMW NA, and the representations made during negotiations for the vehicle by the Dealer. *Inter alia*, he relied on the material representation that any defect would be repaired during the warranty period pursuant to the written warranty, that the vehicle was new and had no issues, and on the reasonable and material assumption that the vehicle had not been damaged or repainted prior to delivery to him.

20. Defendants knew or should have known that the Plaintiff, or potential customers like him, unless notified otherwise, would rely on the assumption that this new vehicle was undamaged and had not been repainted prior to delivery to the Dealer or to him, and this reasonable assumption would be relied upon in the Plaintiff's decision whether to accept the vehicle after having been ordered by him from the factory through the Dealer.

21. In reliance on the above misrepresentations, including that the vehicle was new, with no issues, and the reasonable assumption that the vehicle had not been previously damaged or repainted, the Plaintiff ordered the vehicle, made a cash deposit and took out a loan for the

---

[1] The terms "agreement" and "contract", as used herein, are not synonymous and are used as those terms are separately defined in the Uniform Commercial Code. Va. Code §8.1A-201(3) & (12). Under §8.1A-201(12) "contract", as opposed to "agreement", means the total legal obligation that results from the parties' agreement as determined by the Uniform Commercial Code as supplemented by any other applicable laws.

balance of the purchase price. Upon delivery to him, he accepted this new 2018 BMW X5, Vehicle Identification Number: **5UXKR0C55J0X88943** ("the vehicle") on October 16, 2017, from the Dealer for a cash delivered purchase price of $71,587.13. The vehicle is warranted with a BMW NA limited warranty and other warranties implied by law. **Exhibit 1** is a copy of the Buyer's Order for the vehicle and **Exhibit 2** is a copy of the Retail Installment Sales Contract for purchase money loan that was assigned by the Dealer to BMW Bank of North America, for the purchase of the vehicle.

      22.     In December 2017, approximately six weeks after delivery, Plaintiff discovered the vehicle did not conform to the agreement for the purchase of the vehicle since, after being detailed, he was advised by the detailer that the passenger side quarter panel area and roof of his new vehicle had been repainted.

      23.     Due to either damage or improper manufacture, the passenger side quarter panel area and roof was repainted by BMW Manufacturing after having been painted previously, and prior to delivery to the Dealer.

      24.     This repainting was done improperly, resulting in a defective paint problem on this vehicle in the passenger side quarter panel area and roof of the vehicle, and is a material fact that was deliberately concealed from the Plaintiff by Defendants since, upon information and belief, this fact was never disclosed to the Dealer.

      25.     This repaint, and other defects or conditions with the vehicle have caused it to fail to conform to the warranties that came with the vehicle, resulting in a diminished value.

26. Since the delivery of the vehicle to the Plaintiff, the passenger side quarter panel area and roof has not been in any accident, has not been damaged, and has not been repainted.

27. The current nonconformities are: 1) Defective or improper repair and repaint to the passenger side quarter panel, C pillar and roof, which has resulted in a diminished value to the vehicle because of its existence; 2) there is a whistling noise from the left side mirror while driving at speeds in excess of 70 mph; 3) both key fobs do not stay attached to their blades; and 4) a blower motor for the vehicle's heat emits loud rattling noises. Prior nonconformities that may or may not have been permanently fixed, but are not present at this time, include a heat/air conditioning system that has an air blower that turned on and off every 20 seconds, with the fan running the fan speed will increase every 20 seconds; and the washer fluid sprays above the windshield on the roof.

28. At the time Plaintiff took delivery of and accepted the vehicle, he was unaware of the above-mentioned defects and nonconformities because of the difficulty of discovery and because some of the problems have appeared subsequent to his purchase of the vehicle. Plaintiff intended to purchase a new vehicle, not a new, repainted vehicle. Plaintiff would not have purchased the vehicle had he known the passenger side quarter panel area, C pillar, and roof had been repainted.

29. Soon after discovering the defects and nonconformities, Plaintiff took the vehicle to the Dealer to have the nonconformities corrected. Three or more repair attempts have not corrected the nonconformities with the paint and the whistling noise from the left side mirror within eighteen months of the date of delivery of the vehicle to him.

30. BMW NA refuses to repurchase the vehicle due to any of the noted nonconformities, including the defective paint on the passenger side quarter panel area, the C Pillar, and the roof of the vehicle as confirmed in the March 1, 2019 email from Rebecca Franks, of BMW NA's Executive Customer Care department to Plaintiff's counsel, in which BMW NA knowingly, intentionally, and purposefully misrepresented that the repaint of the vehicle was not caused by BMW NA, stating further that the repainting is of poor quality, and is in line with an aftermarket lot touchup. **Exhibit 3.**

31. BMW NA, as well as the Dealer, received written notice of the defects, and revocation of acceptance of the vehicle from the Plaintiff on several occasions. The Plaintiff notified BMW NA about the alleged nonconformities via a certified letter sent on or about July 18, 2018, and again on January 23, 2019, which had attached to it a copy of the January 15, 2019 letter the Plaintiff had sent to the Dealer, noting that Mr. Lavent Inal, the general manager for BMW's authorized dealer, BMW of Alexandria, had advised the Plaintiff that a BMW factory technician had informed Mr. Inal that these paint defects were "within factory specs" and would not be repaired. Furthermore, BMW NA was notified of the defective paint issue when a factory technician inspected the vehicle in mid-February, 2019, as referenced in the email attached as Exhibit 3.

32. The defects and nonconformities continue to exist and substantially impair the vehicle's use and market value to the Plaintiff, who has used it for his personal use, and who has properly used and serviced the vehicle while it has been in his possession.

33. At this time, except for normal reasonable wear and tear from use, the vehicle's repainted passenger side quarter panel, repainted "C" pillar, and its roof are in the same condition as when the vehicle was delivered to the Plaintiff.

34. The vehicle, as accepted, has a substantially reduced value to the Plaintiff.

35. Plaintiff revoked acceptance of the vehicle pursuant to Virginia Code §8.2-608, and the Magnuson Moss Warranty Act which permits claims for "damages and other equitable relief" [15 U.S.C. §2310(d)(1)], and asked BMW NA and the Dealer to return the purchase price and all other damages sustained and recoverable under Virginia law, if it could not fix it. BMW NA and the Dealer have refused to do this.

## COUNT ONE
## BREACH OF WARRANTY
(Against BMW NA Only)

36. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

37. As a direct and proximate result of the BMW NA's failure to repair the vehicle's defects in a reasonable period of time thereby causing the BMW NA's written warranty to fail of its essential purpose, and as a result of its other acts and omissions, deceit and fraud, BMW NA has breached its warranty under Va. Code §8.2-714, causing the Plaintiff to suffer damages, past, present, and future, including but not limited to, the loss of the benefit of the bargain, paying an excessive price for the vehicle, excessive finance charges, loss of use, inconvenience, embarrassment and aggravation, emotional distress, together with costs and attorney fees incurred in obtaining relief for this defendant's wrongful acts and omissions.

## COUNT TWO
## BREACH OF EXPRESS AND IMPLIED WARRANTIES UNDER THE MAGNUSON-MOSS WARRANTY ACT
(Against BMW NA Only)

38. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

39. Plaintiff is a "consumer" as defined in 15 U.S.C. §2301 (3); BMW NA fits the definition of "supplier" and "warrantor" as defined in 15 U.S.C. §2301 (4) and (5); and the vehicle is a "consumer product" as defined in 15 U.S.C. §2301 (1).

40. BMW NA failed to provide any information about its informal dispute resolution procedure when asked by the Plaintiff in his July 18, 2018 letter to BMW, and thus BMW has violated its duties as a warrantor as required by the Rules promulgated by the Federal Trade Commission and thus waived its right to demand resort to it informal dispute resolution procedure. 16 C.F.R. Part 700, §703.2 (d), (c), and (f).

41. The vehicle was manufactured after July 4, 1975 and an express Limited Warranty and an implied warranty of merchantability were given to Plaintiff as a part of the purchase, warranties which meet the definition of "written warranty" and "implied warranty" contained in 15 U.S.C. §2301 (6) and (7).

42. The Limited Warranty has failed of its essential purpose since the vehicle's nonconformities have not been repaired in a reasonable period of time, and thus BMW NA has breached its written warranty, entitling the Plaintiff to either revoke his acceptance of the vehicle, pursuant to the Act [15 U.S.C. §2310(d)(1)] and Va. Code §8.2-608, or seek damages under Va. Code §8.2-714. This breach and its failure to provide a refund or damages, violates the Act. 15 U.S.C. §§2304 (a)(1) and (4).

43. As a proximate result of this defendant's violations of the Act and breach of its warranties, the Plaintiff has been damaged for which the BMW NA is responsible for any legal or equitable remedies. 15 U.S.C. §§2304(a) and 2310(d).

### COUNT THREE
### VIOLATION OF THE MOTOR VEHICLE WARRANTY ENFORCEMENT ACT
(Against Both Defendants)

44. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

45. As individually defined in §59.1-207.11, et. seq., of the Code of Virginia, the Plaintiff is a "consumer," the Defendants are a "manufacturer" and a "distributor", "the vehicle" is a "motor vehicle," and the defects in the vehicle constitutes "nonconformities."

46. Defendants and its agents have failed to correct nonconformities in the vehicle after a reasonable number of repair attempts, which has significantly impaired the use and market value of the vehicle to the Plaintiff. BMW NA has been properly notified of the nonconformities and has refused the Plaintiff's demand for a full refund. Defendants' actions therefore are in violation of the Motor Vehicle Warranty Enforcement Act ("the Lemon Law"), §§59.1-207.11, 207.13, and 207.14, Code of Virginia (1950).

### COUNT FOUR
### ACTUAL AND CONSTRUCTIVE FRAUD
(Against Both Defendants)

47. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

48. BMW NA, *inter alia*, intentionally misrepresented the vehicle as new, when in fact it was a new, repainted vehicle, thereby concealing a material fact it knew would not be passed onto the Plaintiff or customers like him by the Dealer. Bothe defendants deliberately

concealed that the vehicle had been damaged and repaired and repainted or was defectively painted initially and repainted. These were facts and omissions relied on by the Plaintiff to purchase the vehicle and have caused him actual damages.

49. Defendants' actions show willful and malicious conduct in conscious disregard of the Plaintiff's rights sufficient to justify an award of punitive damages under this Count.

50. In the alternative, BMW's actions, misrepresentations and omissions were negligent and thus constitute constructive fraud.

## COUNT FIVE
### (Against Both Defendants)
### BREACH OF THE VIRGINIA CONSUMER PROTECTION ACT

51. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

52. The sale of the vehicle to the Plaintiff was a "consumer transaction" as defined in §59.1-198 of the Code of Virginia; the vehicle constitutes "goods" as defined in §59.1-198 of the Code of Virginia; Defendants are "suppliers" as defined in §59.1-198 of the Code of Virginia; and Plaintiff is a "person" as defined in §59.1-198 of the Code of Virginia.

53. Besides BMW NA's affirmative misrepresentations of the vehicle as a "new" vehicle, and both defendants' deliberate concealment of the repainting of the vehicle, the defendants offered for sale a vehicle that was defective, blemished, reconditioned, and was a "second", irregular, imperfect, and "not first class" without clearly and unequivocally indicating in the offer for sale that the vehicle was defective, blemished, reconditioned, and was a "second", irregular, imperfect, not "first class".

54. In the course of the transactions involving the vehicle, in its actions described above Defendants have engaged in the fraudulent and deceptive practices described above in violation of §§59.1-200A. 6, 7, and 14 of the Code of Virginia.

55. On information and belief, Defendants intended that the plaintiff, or people like him rely upon the above-described misrepresentations and omissions.

56. The above-described actions were committed by Defendants willfully and entitle the Plaintiff to seek recovery of three times his actual damages, plus attorney fees and court costs, pursuant to §59.1-204 of the Code of Virginia, or in the alternative were unintentional violations, entitling the Plaintiff to restitution, legal fees, and costs under §59.1-207.

WHEREFORE,

1. Under Counts One, Two, and Three, due the BMW NA's breach of warranty and violation so the Magnuson-Moss Warranty Act, the Plaintiff's revocation of acceptance of the vehicle, and due to both Defendants violation of the Lemon Law, Plaintiff requests this Court to order BMW to repurchase the vehicle and provide him a full refund, which includes the purchase price of SEVENTY ONE THOUSAND, FIVE HUNDRED AND EIGHTY SEVEN DOLLARS and THIRTEEN CENTS ($71,587.13), plus any other collateral charges as defined in Va. Code §59.1-207.11 of the Lemon Law, incidental and consequential damages, loss of use, expert witness fees, pre-judgment interest, all reasonable attorney's fees, costs and expenses herein incurred.

In the alternative to a repurchase of the vehicle under Counts One Two and Three, the Plaintiff demands his actual damages, incidental and consequential damages, prejudgment interest, and legal fees.

2. Under Counts Four, and Five the Plaintiff demands, jointly and severally:

   a. His actual damages for the Defendant's fraud in the amount of $10,000.00;

   b. Punitive damages for Defendants' s actual fraud in amount of $1,000,000.00;

   c. Plaintiff's actual damages under the VCPA in the amount of $10,000.00;

   d. Exemplary damages from Defendants of three times Plaintiff's actual damages for each willful violation of the VCPA pursuant to Va. Code § 59.1-204;

   e. All legal fees, costs and prejudgment interest; and

   f. Such other relief as the Court deems appropriate.

   g. In the alternative to his actual damages, rescind the contract and award a return of the money paid towards the vehicle from all the defendants, plus require payoff of the loan taken out for the purchase of the vehicle with BMW Bank, and award all incidental and consequential damages, and legal fees and costs; and

   g. Such other relief as the Court deems appropriate.

**Trial by jury is demanded.**

Respectfully Submitted,

**GEOFFREY S. BURKE,**

/s/ John Cole Gayle, Jr.
John Cole Gayle, Jr., Esquire
VSB No. 18833
The Consumer Law Group, P.C.
1508 Willow Lawn Drive, Suite 220
Richmond, Virginia 23230
Telephone: 804 282-7900
Facsimile: 804 673-0316
jgayle@theconsumerlawgroup.com

and

/s/ Thomas C. Junker, Esquire
Thomas C. Junker, Esquire
VSB No. 29928
FISKE LAW GROUP, PLLC
100 North Pitt Street, Suite 206
Alexandria, Virginia 22314
Telephone: (703) 518-9910
Facsimile: (703) 518-9931
tjunker@fiskelawgroup.com

*Counsel for Plaintiff*